## Phillips v. Riedinger, et al.

(Decided December 15, 1922.)

### Appeal from Campbell Circuit Court.

1. Brokers—Earnest Money—Purchase of Property by Broker.—A broker who acting for his principal in a sale of real property, receives a proposition to purchase a part of the property at a price fixed by the owner, and who accepts said proposition and receives thereon $100.00 earnest money, cannot thereafter, without divulging all the facts to his principal, buy the property from the principal at the listed price and take the profits himself.

2. Brokers—Purchase of Property.—A broker may, however, buy from his principal any property listed with him for sale if he discloses to his principal all the facts, and he may buy from his principal such property before he enters into, or has opportunity to enter into a good faith contract of sale of said property.

3. Brokers—Duty to Principal.—It is the duty of the broker with whom real property is listed for sale to advise his principal of the progress made, and to at all times deal fairly with his said principal.

4. Judgment—Setting Aside.—A verdict which is greatly in excess of a sum which the law and facts warranted, may be set aside on timely notice and a proper judgment entered instead thereof, if on the evidence heard the plaintiff is entitled to but a given sum which may be ascertained by calculation.

L. J. CRAWFORD for appellant.

HOWARD M. BENTON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant, Mrs. Elanore R. Phillips, was the owner of a block of houses on Overton street in the city of Newport, Kentucky, in April, 1920, which she listed with the real estate brokerage firm of Riedinger & Broering, of Newport, for sale on a commission of three per cent. Her husband was her agent and made the arrangement and acted for her in all matters hereinafter mentioned. The prices fixed on the houses and at which the real estate brokers were to sell, were $3,200.00 for each of the inside houses and $3,600.00 each for the two end houses. Appellees did not have the exclusive privilege of selling the property, for appellants had listed the property with several other brokers in that city. On May 3rd, appellees found a prospective purchaser for either one-half or all of the six houses, but he offered only $15,000.00 for the

entire block. On the same day one of their salesmen had found a buyer for house No. 613, which was one of the block at the price of $3,200.00, it being an inside house. This latter contract was made between five and six o'clock on the afternoon of May 3rd, and a deposit of $100.00 was made by the purchaser with the broker. That night the brokers undertook to see Phillips, the husband of appellant, and tell him what propositions they had received and to obtain from him an option upon all of the houses for themselves. About nine or ten o'clock that night they met him on the street near his home and had a conversation with him in which Phillips proposed to sell the whole block of houses to the brokers for $18,000.00, and gave the brokers until 11 o'clock the next day in which to determine whether they would accept the property at that price. In that conversation, according to the evidence for appellee, the brokers told Phillips that they had an opportunity to sell one of the inside houses for $3,200.00, the price at which he had listed it, and Phillips told the brokers he had found a person who would buy one of them at $3,200.00. The brokers did not, however, tell Phillips that they had a deposit of $100.00 in their hands on the contract of purchase for house No. 613. Before the hour of 11 o'clock the next day the brokers, or some of them, went to the office of Phillips in Cincinnati and reported what progress they had made, except they did not tell Phillips that they had received $100.00 for the purchase of house 613, and finally said to Phillips they would like to buy the property themselves and take the chances of selling it out if he would make to them a low price, and informed him if he would make a low price they would either accept or reject it at that time. Phillips in response to this request made the price $17,000.00 without commission and requiring the brokers to assume certain taxes. Immediately the brokers accepted the proposition and entered into a written contract setting forth its terms. This was on May 4th. Very shortly thereafter the brokers sold three of the houses to one purchaser at the price of $10,000.00, and they sold the other three houses to three individuals at the prices which they had sold the first one: $3,600.00 for the end house and $3,200.00 each for the inside houses. In this deal they made a profit of almost $3,000.00, but it appears from the evidence that Mrs. Phillips and her husband had only owned the property a short time and had made a very large profit in selling it for $17,000.00.

After the deals were closed and the deeds all made this suit was commenced in October, 1920, by Mrs. Phillips to recover $380.83 which she alleged was due her on account of the sale of house No. 613, because, as she states, the brokers had consummated that deal and had actually received a deposit on the sale while they were acting as her agents, and induced her to sell the six houses to them without disclosing to her, as principal, the fact they had sold said house, and had actually received a good faith payment of $100.00. She amended her petition several times, increasing the amount for which she sued until it finally amounted to more than $2,800.00. The answer traversed the material averments of the petition and denied that the brokers were indebted to her in any sum. A trial by jury resulted in a verdict in Mrs. Phillips' favor for $2,285.00. A motion for new trial being overruled judgment was entered in accordance with the verdict. Later the court set aside the judgment for $2,285.00 and entered in lieu thereof one for $359.00, with interest from June 1, 1920, and her cost. From this judgment Mrs. Phillips appeals.

Appellant in her brief says that there are but two issues of fact: (a) whether house No. 613 was listed for sale by appellees, and whether prior to the purchase by Riedinger they sold it as such agent or at all; (b) whether appellant would have sold all six houses to appellee Riedinger if she had known of the sale theretofore made by the brokers of house 613.

Taking up the first of these issues of fact, we are persuaded that house 613 was listed for sale by appellees and that the brokers had found a purchaser for it and entered into a contract with the purchasers for the sale of this house, receiving $100.00 as earnest money, and this trade was finally consummated by the brokers after the purchase of the property from Mrs. Phillips.

The second question of fact is not nearly so clear as the first. But we think the whole case involves one question only, and that is whether at the time the brokers sold house 613 for $3,200.00, and received a payment of $100.00 thereon, they had a purchaser for the balance of the houses at the price at which the same had been listed with them. Clearly the brokers sold house 613 while they were acting as agents for and on behalf of Mrs. Phillips, and in consequence were entitled to receive only three per cent upon the sale price of $3,200.00, and no more. It was their duty to disclose to their principal, Mrs. Phillips, the

whole facts concerning the transaction and to have made known to her the existence of the contract of sale and the payment of $100.00 made on said house.

The proof shows conclusively that at the time they entered into the contract for the purchase of the six houses, including house No. 613, they had no contract for the sale of the balance of the property but merely had a proposition from a would be purchaser to take the six houses at $15,000.00, which was $5,000.00 less than the amount at which Phillips had listed the property with the brokers. The brokers told Phillips that they had understood he had listed the property with other brokers at $18,000.00 and asked him if he would not let them sell it at the same price, and asked Phillips to give them the exclusive right to do so until 11 o'clock the following day, and this Phillips agreed to. Before 11 o'clock the next day the brokers appeared at the office of Phillips in Cincinnati and asked him how little he would take for the whole property and sell it to them, and upon their agreeing to give him a prompt answer he told the brokers he would take $17,000.00 for the six houses. This proposition the brokers immediately accepted and they entered into a written contract whereby Reidinger, one of the members of the firm, purchased the property from Mrs. Phillips at that price, and Reidinger paid Phillips by check $500.00 to bind the bargain. In a few days after this transaction took place the brokers found a purchaser for three of the houses and caused Phillips and his wife to make a deed for the said house to the purchaser and at that time the brokers paid Phillips $8,500.-00, which made $9,000.00 in all. Later and within a few days the brokers found three other purchasers for the other three houses and Phillips and wife made deeds to each of the individual purchasers, whereupon the brokers paid Phillips $8,000.00, the balance of the purchase price.

It therefore appears that at the time the brokers purchased the property from Phillips and wife they had no proposition for the purchase of any of the property except for house 613, at $3,200.00 and a proposition to purchase all of the property at $15,000.00. The latter proposition of course Phillips would not consider when it was laid before him. This being true the brokers were not entitled to commission from Phillips on any of the houses sold except No. 613 but were entitled to a commission of three per cent upon that house; nor was Phillips and wife entitled to recover of the brokers the difference between

the price which they paid appellant and that at which the brokers sold the property, for Phillips acting for himself and wife knew of the facts relative to the five houses then to be sold and with all these facts before them agreed to sell the property, including house No. 613, to the brokers for $17,000.00. The agents therefore dealt fairly with their principal with respect to the five houses but unfairly with respect to house 613.

The doctrine is well stated in 21 R. C. L. p. 829, where it is said "that an agent cannot, either directly or indirectly, have an interest in the sale of the property of his principal which is within the scope of his agency, without the consent of his principal, freely given, after full knowledge of every matter known to the agent which might affect the principal. If employed to sell, the agent may not become the purchaser; and if employed to buy he may not be the seller. An agent may undoubtedly buy of his principal, or have an interest in the sale of the property belonging to his principal; but in such case the burden is upon the agent to show that the principal had knowledge, not only of the fact that the agent was buying the interest, but also of every material fact known to the agent which might affect the principal, and that, having such knowledge, he freely consented to the transaction."

We think the principal, Mrs. Phillips, and her husband freely consented to the purchase of the six houses except house No. 613, but they did not have knowledge of the actual facts and did not therefore give their consent or assent to the transaction concerning house No. 613, which was sold by the brokers and the contract closed while the said brokers were acting as the agents of appellants, Phillips and wife.

As the judgment entered for $359.00 is equal to, if not greater than the true amount due appellants, and there being no cross-appeal, it must be and is affirmed.

Judgment affirmed.